# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

TURBO WILLIAMS, #422276,

    Petitioner,

v.

WARDEN and
ATTORNEY GENERAL OF MARYLAND,

    Respondents.

Civil Action No. TDC-15-3764

## MEMORANDUM OPINION

Petitioner Turbo Williams, an inmate at North Branch Correctional Institution in Cumberland, Maryland, has filed a Petition for a Writ of Habeas Corpus challenging his 2013 conviction in the Circuit Court for Harford County, Maryland for possession of a controlled dangerous substance ("CDS") with intent to distribute and related offenses. After Williams supplemented the Petition at the direction of the Court, Respondents filed a Limited Answer seeking dismissal of the Petition as containing exhausted and unexhausted claims. Pursuant to a court order, Respondents then filed an Answer addressing the merits of Williams's claims, and Williams filed a Reply. Having considered the Petition and briefs, the Court finds that no hearing is necessary to resolve the issues. *See* Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts; D. Md. Local R 105.6; *see also Fisher v. Lee,* 215 F.3d 438, 455 (4th Cir. 2000) (finding that the petitioner was not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons set forth below, the Petition will be DENIED.

## BACKGROUND

On February 24, 2012, at 11:10 a.m., Officer Adam Laprade of the Maryland Transportation Authority Police observed a speeding vehicle on Interstate 95 in Harford County, Maryland. Laprade activated his police cruiser's lights and siren and radioed for back-up assistance. While Laprade was following the vehicle, he saw the driver, later identified as Turbo Williams, throw white, rock-like material and clear plastic bags from the car window. Three bags containing the white, rock-like substance, which Laprade believed to be crack cocaine, hit his windshield.

After Laprade stopped the vehicle, police searched the car and found two clear plastic bags with white residue, small amounts of suspected crack cocaine throughout the vehicle, and trace amounts of suspected marijuana. Two plastic bags with white residue were found stuck in Laprade's windshield wipers. One of the plastic bags recovered from the windshield was a sandwich-sized bag containing multiple smaller plastic bags with a white powdery substance in them. Officers searched the area and found five more plastics bags that appeared to have been thrown from the car as well as rock-like substances which were later analyzed and confirmed to be crack cocaine. Officers searched Williams and recovered a plastic bag containing a small rock of crack cocaine from under the waistband of his underwear. Overall, the amount of crack cocaine recovered totaled 8.3 grams.

At a jury trial in the Circuit Court for Harford County, a video of the traffic stop, recorded by a camera attached to Laprade's police cruiser, was played for the jury and entered into evidence. On the first day of trial testimony, defense counsel informed the Court that he and the prosecutor had just learned that the crack cocaine evidence had been destroyed. Because Williams had initially entered a guilty plea to the charges, the evidence had been destroyed

pursuant to police department policy. Later, Williams successfully moved to withdraw his plea, and the case proceeded to trial. Defense counsel informed the court that, if the drugs had been available, he would have shown them to the jury to demonstrate that the amount recovered was insufficient to support a finding of intent to distribute. Defense counsel acknowledged that he did not have grounds for a mistrial, but stated to the court that the unavailability of the evidence would hinder the defense. The trial judge told defense counsel that he would be "very liberal" in allowing him to present a visual aid to the jury. Trial Tr. (Nov. 19, 2013) at 56, Answer Ex. 6, ECF No. 16-2. The judge suggested using baking soda to demonstrate the quantity of recovered CDS. The parties then agreed to use powdered coffee creamer for that purpose.

The parties stipulated in a statement read to the jury that the CDS evidence had been tested and found to be crack cocaine, and that it was then destroyed pursuant to police department policy. Defense counsel was then permitted to show 8.5 ounces of coffee creamer to the jury as a demonstrative aid to simulate the amount of drugs seized.

The plastic bags that were recovered at the scene were introduced as evidence at trial. Corporal Will Reiber of the Aberdeen, Maryland Police Department was qualified as an expert in CDS terminology and packaging. Reiber testified that the size and type of packaging recovered was "indicative to me of packaging for large amounts of drugs, cocaine[.]" Trial Tr. (Nov. 20, 2013) at 25, Answer Ex. 7, ECF No. 16-3. Reiber opined that based on that packaging, as well as the likely quantity of drugs that it would have contained, "it is clear to me that this case is a case that would meet the threshold of possession with intent to distribute." *Id.* at 32.

The jury found Williams guilty of possession of a CDS with the intent to distribute, possession of drug paraphernalia, and fleeing from and eluding the police. On January 29, 2014, the Circuit Court sentenced Williams as a subsequent offender to 40 years of imprisonment, with

all but 19 years suspended, and a consecutive one-year term of imprisonment on the fleeing and eluding conviction.

Through counsel, Williams raised three questions on direct appeal: (1) whether the trial court erred in allowing the State to strike certain jurors; (2) whether Williams was denied the right to confront the evidence; and (3) whether the evidence was legally insufficient to sustain the conviction for possession of cocaine with the intent to distribute. On August 24, 2015, the Court of Special Appeals of Maryland affirmed the judgment of conviction. Williams filed a petition for a writ of certiorari, which the Court of Appeals of Maryland summarily denied on November 23, 2015. *Williams v. State*, 126 A.3d 5 (Md. 2015) (Table).

Williams's judgment became final for purposes of direct appeal on February 21, 2016. *See* Sup. Ct. R. 13.1 (setting the deadline for a petition for a writ of certiorari to the United States Supreme Court at 90 days from the date of the judgment from which appeal is sought). Williams has not initiated state post-conviction proceedings. *See Williams v. State*, No. 12-K-12-000443 (Cir. Ct. Harford Cty. 2012), *available at* http://casesearch.courts.state.md.us/casesearch.

## DISCUSSION

In his Petition, Williams presents four claims for federal *habeas* relief. First, he claims that he was denied the right to confront the evidence against him at trial when the actual crack cocaine was destroyed and not introduced at trial. Second, he asserts that the trial court erred in allowing the State to strike certain jurors based on their age. Third, he contends that the verdict was legally insufficient to sustain the conviction for possession with intent to distribute CDS. Fourth, he claims that his conviction was based on the State's use of perjured testimony ("the perjury claim") based on the showing to the jury of "fake CDS" in the form of the 8.5 grams of

powdered coffee creamer, instead of the 8.3 grams of CDS actually recovered. Pet. at 9, ECF No. 3.

I. **Exhaustion of State Remedies**

As a threshold matter, Respondents assert that because Williams never raised the perjury claim before a state court, it is unexhausted, such that Williams must withdraw that claim or the Petition must be dismissed without prejudice in its entirety for lack of exhaustion of state remedies. "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1) (2012); *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999) ("Federal *habeas* relief is available to state prisoners only after they have exhausted their claims in state court."). This rule is appropriate because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." *Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)). Thus, a federal *habeas* petition may not proceed unless all claims have been previously asserted before a state court. *See Rose*, 455 U.S. at 520 ("[B]efore you bring any claims to federal court, be sure that you first have taken each one to state court."). Specifically, exhaustion requires that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. Notably, the exhaustion requirement is not a jurisdictional prerequisite to federal *habeas* relief but rather a matter of comity established by statute. *See Granberry v. Greer*, 481 U.S. 129, 133-35 (1987). Accordingly, a court may deny

an application for a writ of *habeas corpus* on the merits, even if the petitioner has failed to exhaust state remedies. 28 U.S.C. § 2254(b)(2).

Here, although Respondents are correct that Williams never presented his specific perjury claim to the state court on direct appeal or otherwise, they acknowledge that it largely restates Williams's claim that he was denied the right to confront evidence in that they both essentially challenge the failure to introduce the actual CDS and the introduction of the coffee creamer as a demonstrative aid. Under these circumstances, the Court will construe the perjury claim as a part of the previously exhausted Confrontation Clause claim and will thus review the merits of the Petition.

## II. Legal Standard

A petition for a writ of *habeas corpus* may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal *habeas* statute sets forth a highly deferential standard for evaluating state court rulings, under which state court decisions are to "be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005); *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997). A federal court may not grant a writ of *habeas corpus* unless the state court's adjudication on the merits (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). "[A] federal *habeas* court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 599 U.S 766, 773 (2010). The state court's application of federal law must be "objectively unreasonable." *Id.*

Furthermore, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal *habeas* court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The fact that "reasonable minds reviewing the record might disagree about the finding in question" is not enough to deem a state court's factual determination unreasonable. *Id.*

The relevant state court determination for review is the last "explained" state court decision to consider the claim. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805–06 (1991). Here, that decision is the opinion of the Court of Special Appeals of Maryland on direct appeal. *See Williams v. State*, No. 2685, 2015 WL 5822047 (Md. Ct. Spec. App. Aug. 24, 2015). Williams's claims for federal *habeas* relief will therefore be reviewed in the context of the analysis of the Court of Special Appeals on the same claims asserted here.

### III. Confrontation Clause

The Confrontation Clause states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Williams claims that his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution were violated because the actual drugs seized on the day of his arrest were destroyed and were not offered as evidence at his trial. Relatedly, he claims that the prosecution committed perjury by presenting to the jury a bag containing 8.5 grams of coffee creamer in order to demonstrate the quantity of drugs, rather than the 8.3 grams of CDS actually recovered.

This claim fails under the doctrine of procedural default. Under this doctrine, a federal court cannot review a claim if the state court disposed of that claim based on "adequate and independent state-law grounds, unless the petitioner can show cause and prejudice for, or a

fundamental miscarriage of justice resulting from, failure to comply with the applicable rule." *Bostick v. Stevenson,* 589 F.3d 160, 164 (4th Cir. 2009). A ground is "adequate" if it is based on a rule or law that is firmly established and regularly and consistently applied. *Id.* A ground is independent if it does not require the state court to rely on a federal constitutional ruling. *Brown v. Lee,* 319 F.3d 162, 169 (4th Cir. 2003). When a claim was resolved on such an adequate and independent state law basis, a federal court may not address the merits of the claim unless the petitioner can show: (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits; or (2) that failure to consider the claim on the merits would result in a fundamental miscarriage of justice, specifically, the conviction of one who is actually innocent. *See Murray v. Carrier,* 477 U.S 478, 495-96 (1986). "Cause" consists of "some factor external to the defense [that] impeded counsel's efforts to raise the claim in State court at the appropriate time." *Breard v. Pruett*, 134 F.3d 615, 620 (4th Cir. 1998). In order to demonstrate prejudice, a *habeas* petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see also Murray*, 477 U.S. at 494 (quoting *Frady*). Even when a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 314-15 (1995); *Wilson v. Ozmint*, 352 F.3d 847, 868 (4th Cir. 2003).

Here, the Court of Special Appeals of Maryland rejected Williams's claim based on the doctrine of "invited error." *Williams*, 2015 WL5822047, at *5-6. As noted by the Court of Special Appeals, the "invited error" doctrine is "the concept that a defendant who himself invites

or creates error cannot obtain a benefit—mistrial or reversal—from that error." *Id.* at *6. Maryland courts regularly apply the invited error doctrine when defense counsel effectively "invites the trial court to commit error" then "cri[es] foul on appeal." *See State v. Rich*, 3 A.3d 1210, 1214-16 (Md. 2010); *Klauenberg v. State*, 735 A.2d 1061, 1069 (Md. 1999). Invited error is more than a failure to object; it is affirmatively seeking a particular course of action or intentionally waiving a known right. *See Rich*, 3 A.3d at 1216-18. "If the defendant has both invited the error, and relinquished a known right, then the error is waived and therefore unreviewable." *Id.* at 1218.

In finding that invited error barred Williams's claim, the Court of Special Appeals concluded that not only had Williams invited the error but he intentionally relinquished the right to object. *Williams*, 2015 WL 5822047 at *6. The record supports this conclusion. First, the initial destruction of the drugs was in part a result of William's own actions. At trial, defense counsel told the court, "If it wasn't for my client's request for a new trial that created some of the problem, I would ask for a mistrial," thus acknowledging that Williams was in part responsible for the loss of the drug evidence and that he was forgoing his right to file such a motion. Trial Tr. (Nov. 19, 2013) at 57; *Williams*, 2015 WL 5822047, at *5. Second, in the exchange with the trial judge in which the destruction of the drugs was reported, defense counsel noted that the State's expert witness was "going to try to put together about eight grams of something" as a demonstrative exhibit, Trial Tr. (Nov. 19, 2013) at 55, thus illustrating that defense counsel had participated in the decisions to use a substitute white powder as a demonstrative aid to illustrate the quantity of drugs. Third, the Court allowed defense counsel to decide whether to show the coffee creamer exhibit to the jury and whether it would be a demonstrative aid only or evidence that would go to the jury during deliberations:

9

> DEFENSE COUNSEL: I'm kind of in between a rock and a hard place.
>
> COURT: No pun intended.
>
> DEFENSE COUNSEL: Yes. Obviously I have problems with the exhibit.
>
> COURT: Without your okay it doesn't come in. That is why I wanted your input on it . . . . I know on the one hand I thought part of this was to compensate for the other issue that was destroyed.
>
> DEFENSE COUNSEL: It is.
>
> COURT: I wanted you to be able to have something in your hand to show in front of the jury in fairness to you and your client. You can still do that even if it is not in evidence.
>
> DEFENSE COUNSEL: That is what I'm thinking.
>
> COURT: However you want to deal with it.
>
> DEFENSE COUNSEL: I don't mind using it as a demonstrative piece of evidence.
>
> COURT: Typically that is all it would be marked for I.D. I'll defer to you.
>
> DEFENSE COUNSEL: I would rather keep it out.
>
> COURT: That's fine. That is what it will be. It will stay for I.D.

Trial Tr. (Nov. 20, 2013) at 20-21; *Williams,* 2015 WL 5822047, at *6.

Fourth, defense counsel agreed to a stipulation that "through agreement with counsel" the CDS "was analyzed and came back as cocaine with regards to the analysis and per office policy that cocaine was destroyed." Trial Tr. (Nov. 19, 2013) at 105; *Williams,* 2015 WL 5822047, at *6. When the State read the stipulation to the jury, defense counsel told the court, "Judge, that's fine." Trial Tr. (Nov. 19, 2013) at 105; *Williams,* 2015 WL 5822047 at *5.

Under these circumstances, this Court concludes that the Court of Special Appeals appropriately resolved the Confrontation Clause claim on an adequate and independent state law ground, specifically, the invited error doctrine. In so doing, it effectively rejected the perjury

claim on the same basis, because that alleged perjury was the presentation of the same evidence—the stipulation on the drug destruction and test results and the coffee creamer demonstrative aid—that defense counsel either suggested or agreed should be put before the jury. Williams does not claim or show cause and prejudice, or a fundamental miscarriage of justice, to excuse the procedural default. Indeed, Williams does not now claim that the substances recovered on the day of his arrest were not, in fact, crack cocaine. The jury was clearly informed that the demonstrative aid displayed was coffee creamer, not actual drugs, offered to demonstrate the approximate quantity of drugs seized from Williams. *See* Trial Tr. (Nov. 20, 2013) at 98-99. Neither the government witnesses, nor defense counsel, misled the jury in any way.

Finally, the Court notes that Williams's Confrontation Clause claim, even if considered, would necessarily fail because the Confrontation Clause protects the right to confront witnesses, not physical evidence. *See Crawford v. Washington*, 541 U.S. 36, 51-53 (2004) (noting that the Confrontation Clause applies to "witnesses" who provide "testimonial statements" such as "*ex parte* in-court testimony or its functional equivalent" typically contained in affidavits, custodial examinations, or prior testimony that the defendant would be unable to cross-examine). The failure to present physical evidence does not violate the Confrontation Clause. *See United States v. Herndon*, 536 F.3d 1027, 1029 (5th Cir. 1976) (holding that the destruction of a physical sample of moonshine did not violate a criminal defendant's rights under the Confrontation Clause because "that provision is by its terms restricted to 'witnesses' and does not encompass physical evidence as well"); *United States v. Sewar*, 468 F.2d 236, 238 (9th Cir. 1972) (denying a criminal defendant's claim that his Confrontation Clause rights were violated by the government's destruction of a blood sample because "[i]t is the technician who made the test, not the blood sample, who will be a witness against him"). Thus, there is no basis to claim prejudice

11

or a fundamental miscarriage of justice from application of the procedural default doctrine, and, in any event, Williams's Confrontation Clause claim fails on the merits. The Petition is thus denied as to the Confrontation Clause claim and the perjury claim.

## IV. Jury Selection

Williams also asserts, pursuant to *Batson v. Kentucky,* 476 U.S. 79 (1986), that the trial court violated his Fourteenth Amendment right to equal protection of the law when it permitted the State to use peremptory challenges to strike certain jurors based on their age. Respondents assert that this claim fails to present a cognizable basis for federal *habeas* relief because strikes based on age do not violate federal constitutional rights. *See Wilson v. Corcoran,* 562 U.S. 1, 1 (2010) (per curiam) ("Federal courts may not issue writs of *habeas corpus* to state prisoners whose confinement does not violate federal law.").

In *Batson*, the Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment proscribes the use of peremptory challenges to exclude potential jurors based on their race. 476 U.S. at 89. In *Hernandez v. New York*, 500 U.S. 352 (1991), the Court ruled that an explanation for a peremptory challenge that is a "surrogate" or proxy for race also violates the Equal Protection Clause. *Id.* at 372. "The Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race, or on the false assumption that members of his race as a group are not qualified to serve as jurors." *Powers v. Ohio*, 499 U.S. 400, 404 (1991) (internal citations omitted). *Batson* and its progeny provide a three-step framework to determine whether the prosecution's use of peremptory challenges violates the Equal Protection Clause: (1) the defendant must establish a *prima facie* case by showing that he is of a particular racial group and that the prosecutor struck venire members of that race; (2) once there is such a showing, the prosecution must provide a race-

neutral explanation for its challenges to the jurors; and (3) the court must then determine whether the defendant has established purposeful discrimination. *Batson*, 476 U.S. at 96-98.

During jury selection, defense counsel objected to the prosecutor's decision to strike three jurors below the age of 30, arguing that this approach "virtually exhausts all of the young people on this jury." Trial Tr. (Nov. 18, 2013) at 107, Answer Ex. 5, ECF No. 16-1. The prosecution denied striking the jurors based on their age. Rather, the prosecutor stated that he struck Juror No. 14, who was 19 years old, because he was wearing earrings in both ears and, in the prosecutor's experience, "jurors with earrings in both ears and wearing clothes like that they have always been a little bit tricky." *Id.* at 108. The prosecutor stated that he struck Juror No. 25, who was 27 years old, because the juror stated that he or a family member had a conviction for driving under the influence of alcohol ("DUI") six years before the trial. In the prosecutor's view, Juror No. 25's answer "had a little bit of reservation as far as animosity towards the State's Attorney's Office and that is the reason why I struck him was for that." *Id.* at 109. Finally, according to the prosecutor, he struck Juror No. 8, who was 28 years old, because the juror had two close friends with DUI convictions, which led the prosecutor be "afraid that he has some kind of animosity toward the State's Attorney's Office." *Id.* at 111. The trial court accepted each explanation as a permissible justification for striking each potential juror.

On appeal, the Court of Special Appeals denied Williams's claim that the prosecution improperly struck younger jurors on the grounds that age is not a protected class under *Batson*. *Williams*, 2015 WL 5822047 at *4 (citing *Bridges v. State*, 695 A.2d 609, 619 (Md. Ct. Spec. App. 1997)). Although the court relied on a Maryland case for this proposition, its ruling was a correct application of federal law. The Fourth Circuit has held that "age is an acceptable race-neutral factor" that may be used to strike a potential juror. *See Howard v. Moore*, 131 F.3d 399,

408 (4th Cir. 1997) (en banc), *abrogated on other grounds by Miller-El v. Dretke*, 545 U.S. 231 (2005).

In any event, even if age were a protected class under *Batson*, a review of the record reveals that the prosecution offered plausible age-neutral explanations for striking each identified juror, *see supra*, and that the trial court and the Court of Special Appeals reasonably accepted these explanations. The decision rendered by the Court of Special Appeals is thus based on facts well-supported in the record and premised on a reasonable application of *Batson* to those facts, including the trial court's assessment of the prosecutor's demeanor and purpose. Accordingly, the Court finds that the state court ruling was neither contrary to, nor involved an unreasonable application of *Batson* or an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. The Court will therefore deny the Petition as to this claim.

## V.     **Sufficiency of the Evidence**

Finally, Williams claims that the evidence presented at trial was insufficient to support his conviction for possession of cocaine with intent to distribute because the cocaine was not admitted into evidence and there was insufficient evidence of intent to distribute.

In reviewing this claim, the Court of Special Appeals noted that at the close of the State's case, defense counsel moved for judgment of acquittal but offered no argument in support of the motion and instead told the court, "I think we can all agree that the issue is one for the jury to decide in this case." *Williams,* 2015 WL5822047, at *7. The trial court agreed that the evidence was sufficient to submit the remaining counts to the jury and denied the motion. The Court of Special Appeals therefore ruled that "defense counsel did not argue the motion for judgment of acquittal with any particularity and even conceded that the evidence was

sufficient to present to a jury. Accordingly, this issue is not preserved for our review." *Williams,* 2015 WL5822047, at *7.

The Court of Special Appeals also concluded that, even if the issue had been preserved, the evidence at trial was sufficient to support Williams's conviction for possession with intent to distribute. On the element of intent to distribute, the trial court had instructed the jury:

> Distribute means to sell, exchange, offer possession of the substance or to give it away. No specific quantity is required for you to find intent to distribute. There is no specific amount below which the intent to distribute disappears and there is no specific amount above which the intent to distribute appears. You may find the intent to distribute a substance from the possession of such a quantity of it, which, when considered with all the other circumstances in this case, reasonably indicates the intent to distribute.

Trial Tr. (Nov. 20, 2013) at 80; *Williams,* 2015 WL 8522047, at *7.

A state court conviction will withstand a due process challenge to the sufficiency of evidence if the federal *habeas* court determines, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). A reviewing federal court must give deference to the findings of fact by the state courts, both the trial court and the appellate court. 28 U.S.C. § 2254(d); *Sumner v. Mata,* 449 U.S. 539, 546-47 (1981).

The Court of Special Appeals considered the evidence supporting the possession with intent to distribute conviction. On the possession element, Officer Laprade testified that he observed Williams throwing plastic bags out of his car window, and the parties stipulated that the bags recovered from the roadway and Williams's car tested positive for crack cocaine. As for the element of intent to distribute, Corporal Reiber, the expert witness, testified that the nature and size of the packaging, which included a larger sandwich bag with smaller ones

contained inside, along with the fact that Williams had discarded multiple bags from a moving vehicle, supported the conclusion that the actual drug quantities were larger than the 8.3 grams of cocaine actually recovered, which by itself had a street value of $800. Corporal Reiber further testified that the fact that Williams was apprehended while driving northbound on a route consistent with travel from Baltimore City to Harford County on a Friday morning at 11:00 a.m. also supported an inference of intent to distribute because, in his experience, drug dealers have been found to transport drugs into Harford County on Fridays to prepare to sell to recreational drug users, who typically engage in such use on weekends. He also testified that the fact that Williams was driving a rental car under another person's name was indicative of an intent to distribute, because drug dealers often use vehicles not linked to them personally so that if law enforcement ran the license plate number, it would not identify the dealer or his address.

Under the *Jackson* standard of review, this evidence was sufficient for a rational factfinder to conclude that Williams possessed crack cocaine with the intent to distribute. In addition to the plastic bags and quantity of crack cocaine in evidence and the stipulation about the drug testing, the evidence included Williams's highly incriminating efforts to discard the drugs during the chase and Corporal Reiber's expert testimony on which the jury could reasonably rely. Where the Court of Special Appeals' rejection of William's sufficiency of the evidence claim was a reasonable application of federal law, the Court concludes that this claim provides no grounds for *habeas* relief under 28 U.S.C. § 2254.

## VI. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the

applicant." Because the accompanying Order is a final order adverse to Williams, 28 U.S.C. § 2253(c)(1) requires issuance of a certificate of appealability before an appeal can proceed.

A certificate of appealability may issue if the prisoner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner may satisfy the standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a petition is denied on procedural grounds, the petitioner may meet the standard by showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Id.*

Williams's claims have been dismissed on both substantive and procedural grounds. Upon review of the record, this Court finds that Williams has not made the requisite showing. The Court therefore declines to issue a Certificate of Appealability. Williams may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

## CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus is DENIED. The Court declines to issue a Certificate of Appealability. A separate Order shall issue.

Date: May 10, 2018

THEODORE D. CHUANG
United States District Judge